UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZHERONG KANG, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No. 21-2944 (RJL) |
| ) | |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
(September 23, 2022) [Dkts. #8, 15]

On behalf of a purported class, ninety-five individuals ("plaintiffs") alleging processing delays in their applications for employment authorization documents ("EADs") filed this suit for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., against the Department of Homeland Security ("DHS"), its Secretary, U.S. Citizenship and Immigration Services ("USCIS"), and its Director (collectively, "defendants"). *See generally* Amended Complaint ("Am. Compl.") [Dkt. #4]. Since plaintiffs filed their Complaint and prior to this Court's consideration of plaintiffs' motion for class certification, defendants have adjudicated the employment application of each named plaintiff. *See* Defendants' Notices of Administrative Action [Dkts. #17, 18].

Because plaintiffs' claims are now moot and no exception to mootness applies, their suit must be DISMISSED for lack of subject-matter jurisdiction.

1

## BACKGROUND

**A. Legal Background**

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and its accompanying regulations, certain aliens admitted to the United States may be eligible for employment authorization. Although some aliens are authorized to be employed incident to their status, individuals in a variety of classes specified under 8 C.F.R. § 274a.12(c) must apply for work authorization by filing an application with USCIS. *See* 8 C.F.R. § 274a.13(a). Among those who must apply for work authorization are "alien[s] who ha[ve] filed an application for adjustment of status to lawful permanent resident." *Id.* § 274a.12(c)(9); *see also* 8 U.S.C. § 1255(a).

Although DHS previously directed USCIS to adjudicate employment authorization applications within 90 days of filing, DHS eliminated that regulatory requirement in 2016. *See Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers*, 81 Fed. Reg. 82398, 82455 (Nov. 18, 2016). If USCIS approves an application, the EAD is "valid for a specific period." 8 C.F.R. § 274a.13(b). Previously, "the validity period of an expiring [EAD] … [and] the attendant employment authorization[] [was] automatically extended for an additional period not to exceed 180 days from the date of … expiration if a request for renewal" is timely filed. *Id.* § 274a.13(d). However, in May 2022, DHS increased the extension period to a maximum of up to 540 days from the expiration of the EAD. *See Temporary Increase of the Automatic Extension Period of Employment Authorization and Documentation for Certain Renewal Applicants*, 87 Fed. Reg. 26614 (May 4, 2022).

2

### B. Factual and Procedural Background

Plaintiffs are ninety-five individuals who each fall into the class of nonimmigrants who must apply for employment authorization because they "ha[ve] filed an application for adjustment of status to lawful permanent resident." 8 C.F.R. § 274a.12(c)(9); Am. Compl. ¶ 15. They filed their applications between June 2020 (apart from one filed in July 2019) and October 2021. *See* Am. Compl. ¶ 15. Plaintiffs allege that their applications have been "unreasonably delayed for over six months, and some for over one year." Am. Compl. ¶ 15. As of February 16, 2022, defendants have adjudicated all named plaintiffs' applications. *See* Defendants' Notices of Administrative Action [Dkts. #17, 18].

In November 2021, named plaintiffs filed this suit for declaratory and injunctive relief "on behalf of themselves" and a purported class of "similarly [situated] persons affected by Defendants' actions with respect to EAD adjudications since the abandonment of the 90-day processing deadline, including the inexcusable and unreasonable delays in processing of applications." Am. Compl. ¶ 60. Their proposed class identifies both individuals submitting an initial application for an employment authorization document and individuals requesting an extension for employment authorization. *Id.* The suit alleges defendants (1) "arbitrarily, capriciously, and irrationally departed from their commitment to 90-day processing times for" employment authorization applications; (2) failed to adjudicate plaintiffs' applications within a reasonable time and thus unlawfully withheld or unreasonably delayed agency action; and (3) "arbitrarily, capriciously, and unlawfully implemented the adjudicatory process for EAD applications." *Id.* at ¶¶ 71–107; *see also* 5 U.S.C. § 706(1)–(2).

3

Defendants moved to dismiss plaintiffs' Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, alternatively, to transfer venue under Rule 12(b)(3). *See* Defendants' Memorandum in Support of Motion to Dismiss ("Defs.' MTD") [Dkt. #8-1].  After the parties completed briefing on defendants' motion to dismiss, defendants filed a motion to stay briefing on class certification under Rule 23(c)(1) pending this Court's resolution of their motion to dismiss, which plaintiffs opposed.  *See* Defendants' Motion to Stay Briefing on Class Certification Under Federal Rule of Civil Procedure 23(c)(1) and Local Rule of Civil Procedure 23.1(b) [Dkt. #13]; Plaintiffs' Opposition to Defendants' Motion to Stay Briefing on Class Certification ("Stay Opp.") [Dkt. #19].  Moreover, plaintiffs filed their motion for class certification.  *See* Plaintiffs' Motion to Certify Class [Dkt. #15].  I stayed briefing on class certification pending resolution of the motion to dismiss.  *See* Minute Order of March 2, 2022.[1]  Since the filing of the Amended Complaint, defendants have notified the Court that that they have adjudicated the employment application of each named plaintiff.  *See* Defendants' Notices of Administrative Action [Dkts. #17, 18].  Because this development followed the parties' motion-to-dismiss briefing, I ordered supplemental briefing from the parties on whether the action is moot and, if so, whether any exception to mootness applies.  *See* Minute Order of May 19, 2022.  The parties submitted their supplemental briefing on June 28, 2022.  *See* Defendants' Supplemental Brief Addressing Mootness ("Defs.' Supp. Br.") [Dkt. #23]; Plaintiffs' Supplemental Brief Addressing Mootness ("Pls.' Supp. Br.") [Dkt. #24].

---

[1] Because Defendants' Motion to Dismiss [Dkt. #8] is GRANTED and plaintiffs' claims are DISMISSED for lack of subject-matter jurisdiction for all the reasons set forth herein, the Motion to Certify Class [Dkt. #15] is hereby DENIED as moot.

## LEGAL STANDARD

"When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions.'" *Albra v. Bd. of Trs.*, 296 F. Supp. 3d 181, 185 (D.D.C. 2018) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). "[T]he court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

## ANALYSIS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Notwithstanding defendants' motion to dismiss for lack of subject-matter jurisdiction, this Court is "obligated to consider *sua sponte* issues" that "go[] to subject-matter jurisdiction," which "can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Defendants argue that plaintiffs' claims should be dismissed because they are moot and no exception to mootness applies. *See* Defs.' Supp. Br. at 2–3; *see also* Defs.' MTD at 10.[2]  Because USCIS has adjudicated plaintiffs' applications, the dispute

---

[2] In their Motion to Dismiss, defendants argued that only certain plaintiffs' claims were moot because not all the named plaintiffs' applications had been adjudicated at that time. Defs.' MTD at 10.  Given defendants' notices to the Court that all named plaintiffs' applications have been adjudicated and this Court's obligation to consider subject-matter jurisdiction issues *sua sponte*, I must determine whether each plaintiff's claim is moot—not only those explicitly raised by defendants in their motion to dismiss.

seeking to compel USCIS to adjudicate them is now moot. *Id.* at 3. Although plaintiffs previously indicated that they "agree[d] that those with EAD applications that have now been adjudicated can be dismissed," and that they "intend[ed] to file a notice of voluntary dismissal for selected plaintiffs," no such notice has been filed as to any of the named plaintiffs. Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pls.' Opp.") [Dkt. #9] at 9 n.7. Instead, plaintiffs disagree that the claims are moot, arguing that their "claims for declaratory and injunctive relief remain live despite the intervening agency action." Pls.' Supp. Br. at 1. And, they continue, several exceptions to mootness apply. *Id.* at 4. Unfortunately for plaintiffs, I agree with defendants that the claims are moot and must be dismissed. How so?

### A. Mootness

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l U.S.A.*, 568 U.S. 398, 408 (2013). In other words, "Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantive controversies admitting of specific relief through a decree of a conclusive character." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (quotation marks and citations omitted). Mootness is one element of Article III's limitation. *See id.*; *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019). "The party seeking jurisdictional dismissal must establish mootness, while the opposing party has the burden to prove that a mootness exception applies." *Reid*, 920 F.3d at 832. A claim "is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of*

6

*Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quotation marks and citation omitted).

The adjudication of a named plaintiff's employment authorization application is an "intervening event[] mak[ing] it impossible to grant the prevailing party effective relief." *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (citation omitted). Because defendants have adjudicated the application of each named plaintiff, an order declaring that defendants have violated the APA and that "[d]efendants have unreasonably delayed or unlawfully withheld the adjudication" of the applications and compelling "[d]efendants to immediately adjudicate [p]laintiffs' [employment authorization] applications without further delay" and to "return to and maintain 90-day processing"—plaintiffs' requested relief—would have no effect on plaintiffs. Am. Compl. at 29; *see Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990). Accordingly, plaintiffs' claims are moot. *See generally Penn v. Blinken*, 2022 WL 910525, at *3 (D.D.C. Mar. 29, 2022).

Plaintiffs argue that not all their claims are moot because the adjudication of their applications "did not provide all the relief [p]laintiffs seek in the Complaint," including declaratory and injunctive relief. Pls.' Supp. Br. at 1. "[A] plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009). But a plaintiff who "challeng[es] an ongoing policy must demonstrate 'standing to bring such a forward-looking challenge and [that] the request for declaratory relief is ripe.'" *Id.* (quoting *City of Houston v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994)). "The 'irreducible constitutional minimum of standing contains three elements': injury in fact, causation, and redressability." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting

7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To establish an injury in fact, a plaintiff must demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized … and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (citation omitted). Where a plaintiff "seek[s] declaratory and injunctive relief, past injuries alone are insufficient to establish standing. Rather, [the plaintiff] must show he is suffering an ongoing injury or faces an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).

Plaintiffs here do not have standing to bring a forward-looking challenge because they cannot demonstrate an imminent injury. All the named plaintiffs have received a decision on their application, and their employment authorizations are subject to automatic renewal should the authorizations expire before any renewal applications are processed. And, because plaintiffs only require employment authorization while their underlying adjustment-of-status applications are pending, most plaintiffs are unlikely to have to file for a renewal—or, if they do, to be left without authorization given the auto-extension period. Whether plaintiffs will be subject to the policy again is thus speculative; that plaintiffs "might be" subject to the challenged policy in the future is insufficient to establish standing. *See Haase*, 835 F.2d at 911; *see also Alvarez v. Smith*, 558 U.S. 87, 93 (2009). Plaintiffs' claims are moot.

### B. Exceptions to Mootness

In response, plaintiffs invoke several exceptions to mootness. *See* Stay Opp. at 2; Pls.' Supp. Br. at 4–8. Unfortunately for plaintiffs, none of the exceptions applies.

**1. Capable of Repetition, Yet Evading Review.**  First, plaintiffs invoke the exception to mootness for claims that are capable of repetition, yet evading review. Stay Opp. at 2. This exception "applies only in exceptional situations," *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), where the plaintiff demonstrates that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again," *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc).  Even if plaintiffs satisfied the first prong, they cannot succeed on the second. Claims are not "capable of repetition" if they are "highly fact-specific." *PETA v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005).  Here, as noted above, plaintiffs are unlikely to have to file for renewal of employment authorization and, if they do, the particular harm suffered is unlikely to recur given the highly fact-specific context in which they experienced delay previously—a context affected by the COVID-19 pandemic and a hiring freeze. *See* Defs.' Supp. Br. at 5; *Tony N. v. USCIS*, 2022 WL 612666, at *1 (N.D. Cal. Mar. 2, 2022).

**2. Inherently Transitory.**  Second, plaintiffs invoke an exception to mootness that exists in the class action context. "For every claim, at least one named plaintiff must keep her individual dispute live until certification, or else the class action based on that claim generally becomes moot." *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (citing *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018)).  However, "[w]here a named plaintiff's claim is 'inherently transitory,' and becomes moot prior to certification, a motion for certification may 'relate back' to the filing of the complaint." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 n.2 (2013) (citing *Cty. of Riverside v.*

*McLaughlin*, 500 U.S. 44, 51–52 (1991)).  "The Supreme Court crafted the exception in injunctive class actions challenging criminal and immigration detention procedures." *J.D.*, 925 F.3d at 1308 (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).  In our Circuit, "the 'inherently transitory' exception to mootness requires [courts] to determine (i) whether the individual claim might end before the district court has a reasonable amount of time to decide class certification, and (ii) whether some class members will retain a live claim at every stage of litigation.  An affirmative answer to both questions ordinarily will suffice to trigger relation back." *J.D.*, 925 F.3d at 1311.  "[T]his doctrine has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim." *Genesis*, 569 U.S. at 76–77.

Plaintiffs have failed to meet their burden to show that the inherently transitory exception applies.  To start, plaintiffs' claim of unreasonable delay is fundamentally at odds with the application of the exception: on the one hand, plaintiffs claim that defendants are acting too slowly; on the other, they argue that the plaintiffs' claims do not last long enough.  Moreover, the present context—agency adjudication of applications for employment authorization—is distinguishable from the criminal and immigration detention contexts in which the exception was created.  *Cf. Mons v. McAleenan*, 2019 WL 4225322, at *6 (D.D.C. Sept. 5, 2019).  Plaintiffs cite to no case—nor has the Court found a case—in which our Circuit Court applied the exception to the immigration *application* context.

3. **Pick-Off Doctrine.**  The pick-off exception to mootness "applies when 'a defendant picks off named plaintiffs in a class action before the class is certified' by

10

'strategically mooting named plaintiffs' claims in an attempt to avoid class action.'" *Gomez v. Trump*, 2020 WL 3429786, at *10 (D.D.C. June 23, 2020) (quoting *Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016)). Our Circuit Court has not yet considered this exception. *See id.* Even if our Circuit Court were to recognize the exception, plaintiffs have not met their burden to establish its application here. Plaintiffs claim that the timing of the adjudication of plaintiffs' applications "is highly suggestive of the agency's pick-off motive." Pls.' Supp. Br. at 7. Other than this bare allegation that defendants picked-off the named plaintiffs, plaintiffs have offered no evidence or support for their position. And, as plaintiffs explained previously, "at the time of suit, [p]laintiffs will, presumably, be close to the front of the line for the adjudication of their" applications for employment authorization. *See* Stay Opp. at 2. Plaintiffs have failed to show that the exception applies.

**4. Voluntary Cessation.** "As a general rule, a defendant's voluntary cessation of allegedly illegal conduct does not deprive [a court] of power to hear and determine the case." *Cierco v. Mnuchin*, 857 F.3d 407, 414–15 (D.C. Cir. 2017) (internal quotation marks and citation omitted). Voluntary cessation moots a claim only if "(1) it can be said with reassurance that there is no reasonable expectation … that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Coal. of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1189 (D.C. Cir. 2004) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Because defendants have adjudicated each named plaintiff's application for employment, plaintiffs are no longer affected by the defendants' conduct of which they complain. And there is no indication that defendants will rescind their determinations on any of plaintiffs'

11

adjudicated applications. *See Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 9 (D.D.C. 2021). More generally, the voluntary cessation exception does not neatly apply here: plaintiffs do not claim that defendants have changed their policies or otherwise ceased engaging in the allegedly illegal conduct; rather, defendants simply adjudicated the applications in the course of their processes. Plaintiffs' claims are therefore moot.

## CONCLUSION

For all the foregoing reasons, defendants' Motion to Dismiss [Dkt. #8] is hereby GRANTED and this case shall be DISMISSED for lack of subject-matter jurisdiction. It is further ORDERED that plaintiffs' Motion to Certify Class [Dkt. #15] is hereby DENIED as moot. An order consistent with this decision accompanies this Memorandum Opinion.

*/s/ Richard J. Leon*
_____
RICHARD J. LEON
United States District Judge